Barry K. LEE and Jose
Z. Villa, Appellants,

v.

LEVI STRAUSS & CO., Appellee.

No. 08–94–00017–CV.

Court of Appeals of Texas,
El Paso.

April 6, 1995.

**2.** Note that Prosser admits that no satisfactory definition of a tort is yet to be found.

Gary R. Black, Jr., Dennis L. Richard, Richard, Lee, Rowley, Cobb & Hall, P.C., El Paso, for appellants.

J. Monty Stevens, Dudley, Dudley and Windle, Timothy L. White, Ray, McChristian & Jeans, P.C., El Paso, for appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

### NATURE OF THE CASE

This case presents issues of tortious interference with an employment contract and intentional infliction of emotional distress. Appellants Barry K. Lee and Jose Z. Villa sued Levi Strauss & Co., Threads USA, Dixie Yarns, Inc., and Joe C. Lineberger, alleging claims of libel, conspiracy, tortious interference with contract, and intentional infliction of emotional distress. The trial court granted summary judgment as to all defendants and claims. Appellants bring this appeal against Levi Strauss only, asserting in one point of error that summary judgment was improper on the tortious interference

and intentional infliction of emotional distress claim. We affirm.

## SUMMARY OF THE EVIDENCE

Appellants were sales representatives of Threads, USA. Threads supplied thread for garment manufacturers throughout the United States and Mexico, including Levi Strauss, and Appellants' responsibilities included servicing accounts at Levi Strauss factories.

In early 1989, Threads attempted to secure an "807" contract[1] for the supply of Levi Strauss' entire thread needs for its maquiladora plant in Juarez, Mexico. At the time of the contract discussions, Threads was already supplying approximately one-third of Levi's thread requirements. The negotiations, if successful, would have entitled Threads to supply 100 percent of Levi's thread needs for the 807 program which would have generated approximately one million dollars in sales revenue for Threads.

James Conrad of Threads' home office visited El Paso in February 1989 to meet with John Troeger, an area manager of Levi Strauss. When he arrived in El Paso, Conrad learned from Appellants that they had recently lost the Levi Strauss account at its Roswell, New Mexico factory. He also learned that while Troeger believed the exclusive contract would be beneficial for Levi Strauss, he had expressed doubts about the Appellants' abilities to provide the necessary service. One of Troeger's associates also thought it would be a mistake to award an exclusive contract to Threads because Appellants could not provide the level of service required. Various Levi Strauss plant managers had complained of Villa's failure to call on plants, his failure to sign entry logs, and his habit of wearing sunglasses during business dealings. Conrad also learned that Appellants were not developing new sales leads, such as a Chrysler Corporation sewing plant in Juarez. Conrad's personal impression was that Appellants were not sufficiently effective in their positions to meet Threads' obligations in the proposed 807 contract with Levi Strauss. When he returned to the home office, Conrad recommended that Appellants be terminated and they were in fact terminated on February 24, 1989.

Appellants allege that when they sought a reason for their termination, they were told that they were terminated because Levi Strauss would not do business with Threads unless they were fired. They also claim that Troeger demanded their termination in a letter to Joe Lineberger of Threads. The letter from Troeger to Lineberger, however, states only that prior service was questionable, and that Levi Strauss "couldn't afford for Threads to drop the ball in any way."

## STANDARD OF REVIEW

The standard of review on appeal of a summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Hernandez v. Kasco Ventures, Inc.,* 832 S.W.2d 629, 631 (Tex.App.—El Paso 1992, no writ). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

 In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon,* 690 S.W.2d at 548–49; *Stoker v. Furr's, Inc.,* 813 S.W.2d 719, 721 (Tex.App.—El Paso 1991, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action,

---

1. The 807 program involves an act of Congress which permits United States apparel manufacturers to do sewing offshore in Mexico, the Caribbean, and Central America provided that they utilize American piece goods and trim.

then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d at 633. Alternatively, the defendant-movant must conclusively establish each essential element of an affirmative defense. *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.—Dallas 1992, no writ); *Traylor v. Unitedbank Orange*, 675 S.W.2d 802, 804 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.).

■ Where the summary judgment order does not state the specific grounds on which it was granted, the non-movant on appeal must show that each ground alleged in the motion is insufficient to support the granting of the summary judgment. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 518 (Tex. App.—Austin 1991, writ denied); *City of Coppell v. General Homes Corp.*, 763 S.W.2d 448, 451 (Tex.App.—Dallas 1988, writ denied); *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ).

## TORTIOUS INTERFERENCE WITH CONTRACT

■ Appellants assert that Levi Strauss tortiously interfered with their employment contracts by way of Troeger's alleged demand that they be terminated in order for Threads to be awarded the exclusive contract for supplying the new Juarez plant. Levi Strauss' motion for summary judgment urged that summary judgment was proper because there was no genuine issue of material fact inasmuch as Appellants failed to produce competent evidence that Troeger had made such a demand, and because "one or more of each of the elements of plaintiffs' causes of action are absent as a matter of law." On appeal, Levi urges that summary judgment was proper on additional grounds because Appellants failed to prove the existence of a written employment contract. It argues that the failure to establish the existence of a written contract leads to a failure of the interference and intent elements of the tortious interference claim. However, we de-

cline to consider these latter grounds inasmuch as they were not specifically presented in Levi's summary judgment motion. TEX. R.CIV.P. 166a(c); *McConnell v. Southside Indep. School Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Therefore, we address only the contentions concerning the demand made by Troeger and the affirmative defense of legal justification, as they are the specifically identified grounds contained in the motion.

### 1. Issue of Fact

■ In a tortious interference cause of action, the following requisite elements must be established:

(1) that a contract existed;

(2) that Levi Strauss willfully or intentionally interfered with the contract;

(3) that the interference was a proximate cause of damages; and

(4) that damages actually occurred.

*Hopkins v. Highlands Ins. Co.*, 838 S.W.2d 819, 823 (Tex.App.—El Paso 1992, no writ). Levi's motion for summary judgment asserted that there was no evidence it had interfered with Appellants' employment contracts by demanding their termination. This evidentiary argument amounts to an attack on the "intentional or willful interference" element of Appellants' tortious interference claim.

Levi Strauss presented summary judgment evidence,[2] demonstrating that Appellants were not fired at Troeger's instigation but because they had provided unsatisfactory service on Levi's then existing business with Threads; they were not developing new business; they suffered recurring image problems; and sales were dropping. Levi Strauss also produced what purports to be the letter from Troeger to Lineberger regarding the entire transaction and it reflects Levi's reservations about Threads' ability to perform with its existing personnel. Levi Strauss therefore met its initial burden of showing that there was no issue of fact as to willful or intentional interference. Appellants responded to Levi Strauss' summary judgment motion with their own supporting

---

2. Summary judgment evidence presented by Levi Strauss included excerpts from the depositions of

Terry Whisnant, Joe Lineberger, Villa, James Conrad, John Troeger, and Cecil Cross.

affidavits and deposition excerpts from Lineberger. Lineberger testified that the letter from Troeger led him to believe that he had to terminate Appellants "in order to get that million dollars worth of new 807 business" from Levi Strauss. Lineberger also acknowledged his testimony from a Texas Employment Commission hearing on Villa's termination in which he stated: "[I]f we did not do something about their situation out there, they [Levi Strauss] would quit buying from us." Furthermore, Appellants stated in their affidavits that Lineberger told them they were fired because Troeger would not work with them on the exclusive contract for Levi's new Juarez operation. Taken together in the light most favorable to the non-movants, there is a genuine issue of fact as to whether or not Levi Strauss willfully or intentionally interfered with Appellants' employment with Threads. Summary judgment cannot lie on this ground.

## 2. Legal Justification

Levi Strauss also asserted in its summary judgment motion that its actions were legally justified. Interference with contractual relations is privileged where it results from the *bona fide* exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter. *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.,* 843 S.W.2d 470, 472 (Tex.1992); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991). The subject matter of the contract allegedly interfered with is the employer-employee relationships between Threads and Appellants, and Levi Strauss did not have an equal or superior interest to Appellants' interest in that subject matter.

Levi Strauss did have rights, however, in its then-existing contracts with Threads and in its negotiations for the 807 contract. It is clear from the summary judgment evidence attached to its motion that Levi Strauss had the right to insist that Threads employees comply with its security procedures (i.e. signing in when sales representatives made calls on Levi Strauss plants), the right to service by Threads representatives on its contracts, the right to work with Threads representatives who demeaned themselves in a manner Levi Strauss deemed appropriate, the right to work with Threads representatives who were responsive to its needs, and the right to insist that Threads provide representatives who met these criteria.

Furthermore, we conclude that Levi Strauss could insist that Appellants not be involved in the servicing of its contracts. Inasmuch as the record reflects that these two gentlemen were the only personnel in the El Paso office, it is only rational that in the exercise of its contractual rights, Levi could insist that Appellants be fired. *Cf. Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107–08 (Tex.1984) (holding that an assertion of rights under a non-competition agreement against an employer by a former employer resulting in the termination of an employee is legally justified), *overruled in part on other grounds, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989). To hold otherwise would entail absurd results. Economic relationships between companies are vital components in our society. Employees of companies with ongoing business relations should be subject to discharge upon complaints by a customer company, and they should expect such requests if their personal performance is substandard. Employees are protected from improper discharge in this setting by discrimination in employment statutes, the terms of their employment contracts, and the "*bona fide* exercise" qualification on the affirmative defense of legal justification.

In the instant case, Levi Strauss asserted the affirmative defense of legal justification in its motion for summary judgment. Attached as evidence were deposition excerpts showing that Appellants were terminated because they had provided unsatisfactory service on Levi's then existing business with Threads, and that there were doubts that Appellants could provide satisfactory service on Levi Strauss' new business. Appellants produced summary judgment evidence showing that Threads believed that it would not receive Levi Strauss' new business unless Appellants were fired, and that it might lose its then existing business. Lee's affidavit fails to address whether Levi Strauss' actions

were a *bona fide* exercise of its rights. Villa's affidavit states that Troeger reacted negatively to a cut back in the entertainment provided by Threads for its customers. That in itself, however, is not sufficient to create a fact issue as to whether Levi Strauss acted in the *bona fide* exercise of its rights under its then existing contracts and in the negotiation of its 807 contract. On the summary judgment record before us, we hold the trial court's summary judgment on Appellants' tortious interference claims was proper because Levi Strauss conclusively proved its affirmative defense of legal justification.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 Appellants' burden in proving an intentional infliction of emotional distress cause of action is to show:

(1) the defendant acted intentionally or recklessly;

(2) the conduct was extreme and outrageous;

(3) the actions of the defendant caused the plaintiff emotional distress; and

(4) the resulting emotional distress was severe.

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). Outrageous conduct is that which goes "beyond all possible bounds of decency, and [is] to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (1995); *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993), *quoting* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965). Initially, it is for the court to determine as a matter of law whether the defendant's conduct is so extreme and outrageous as to permit recovery. *Wornick,* 856 S.W.2d at 734, *quoting* RESTATEMENT (SECOND) OF TORTS § 46 cmt. h. Even assuming Levi Strauss insisted, through Troeger, that Appellants be terminated, it was a *bona fide* exercise of Levi Strauss' rights as discussed *supra,* and such a demand is not outrageous. As it is undisputed that Troeger's alleged demand was by private letter to Lineberger, and Lineberger personally terminated the two men in private, we decline to find that outrageous conduct is established by the fact of or by the circumstances of the termination. Summary judgment is proper, therefore, on Appellants' intentional infliction of emotional distress claim, because Levi Strauss has demonstrated as a matter of law that no outrageous conduct occurred.

The Appellants' sole point of error is overruled and the judgment of the trial court is affirmed.