Opinion issued December 19, 2002







 
 


 



In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00855-CV




JAMES L. EVANS AND EUGENE KEIL, JR., Appellants

V.

RELIANT ENERGY INCORPORATED D/B/A
HOUSTON LIGHTING & POWER, Appellee




On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2000-46861




O P I N I O N

          This is an appeal from a summary judgment in favor of defendant/appellee,
Reliant Energy Incorporated d/b/a Houston Lighting & Power (“Reliant”).
Appellants, James L. Evans and Eugene Keil, Jr., former employees of Reliant, sued 
Reliant for tortious interference with their employment agreements with Equisales. 
In two points of error, appellants argue that the trial court erred in rendering summary
judgment because (1) they properly raised a state law claim for tortious interference
and (2) Reliant improperly raised an affirmative defense in its motion for summary
judgment. We affirm.
Background
          Evans and Keil began their employment at Reliant in April of 1970 and May
of 1983, respectively. Both were electricians in the Bushing Shop, where Reliant’s
obsolete and used substation equipment was sent for maintenance, repair, and
evaluation. Based on recommendations from Bushing Shop personnel, Reliant’s
Investment Recovery department sold used equipment to third parties. Equisales, a
Houston company, was one of the largest purchasers of Reliant’s used substation
equipment. In 1976, Evans began working part-time for several outside entities and
individuals, using the name “Lynn Evans Enterprises.” In 1993, Evans began
working for Equisales. In 1995, he recruited Keil to work on a job for Equisales
through Lynn Evans Enterprises. At that time, Reliant’s management knew only that
Evans and Keil were doing outside work for an individual named Johnny Johnson, 
and was unaware that Johnson was affiliated with Equisales. Working at an outside
job was not, per se, a violation of Reliant policies. 
          In February of 1999, Reliant re-issued several corporate policies, including its
Business Ethics Policy. Reliant’s Human Resources personnel conducted a series of
policy review presentations to some 1,683 employees in various employee groups
over a period of several months. A presentation to Bushing Shop employees,
including Evans and Keil, was made on February 17, 1999. 
          All employees were told to sign and return a policy acknowledgment form
stating that they had read and understood each of the policies. The Business Ethics
Policy provided, in relevant part as follows:
No employee shall have any relationships or engage in any activities
which might conflict or give the appearance of conflicting with the
proper performance of Company duties or responsibilities or which
might affect his or her independence or judgment with respect to
transactions between the Company and the employee’s other activities.

The policy acknowledgment form provides, in relevant part as follows:
. . . I hereby certify that I have not, and to the best of my knowledge,
none of my associates, or any other person has engaged in any activity
which might constitute a violation of such policy. I understand that the
policy requires that I report in advance to my departmental or
supervising Officer any proposed new commitment on my part or any
change in circumstances which might involve a possible conflict with
the Company’s Business Ethics policy.

Keil promptly signed and returned the form. Evans returned the form eventually, but
deleted a portion concerning the Business Ethics Policy.
          Evans’ delay in signing the form, his deletion of part of the form, and Reliant’s
concern that Evans had been injured while working for Johnson caused his managers
to scrutinize his outside employment. In doing so, Reliant discovered that Johnson,
for whom Reliant knew Evans and Keil worked part-time, was president and part
owner of Equisales. After consulting with its human resources and legal departments,
Reliant determined that Evans’ and Keils’ outside work for Equisales created the
appearance of a conflict of interest under the Business Ethics Policy. Evans and Keil
repaired the same type of equipment in the Bushing Shop that Equisales routinely
purchased from Reliant. Evans and Keil’s positions in the Bushing Shop gave them
access to information about the condition and availability of used substation
equipment that Reliant might sell to Equisales. Reliant management became
concerned that the two were in a position to provide inside information to Equisales
that could give it an unfair advantage over similarly situated customers. 
           On April 8, 1999, Reliant management met with Evans and Keil, instructed
them to discontinue their work for Equisales, and told them they could face discipline
or termination from Reliant if they did not. Keil left Reliant on April 28, 2000, after
accepting employment with a company in Wimberley.
          Evans and Keil filed suit against Reliant on September 13, 2000, alleging
tortious interference with their employment agreement with Equisales. While
attending Evans’ deposition on July 12, 2001, Evans’ supervisor at Reliant learned
for the first time that Evans had never stopped working for Equisales, despite having
been told by Reliant management to do so more than two years earlier. After
consultation with Reliant’s Human Resources and Legal departments, Evans was
suspended without pay on July 18, 2001, pending further investigation. On July 24,
2001, Reliant terminated Evans for disregarding a direct management order to stop
working for Equisales. Evans had planned to retire from Reliant on July 31, 2001,
after reaching age 55 on July 22, 2001. Reliant terminated Evans after his 55th
birthday so that he would not lose his retiree-medical benefits.Standard of Review
          A traditional summary judgment motion brought under Rule 166a(c) is proper
only when the movant establishes that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s
Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). In reviewing a
summary judgment, we indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. Johnson, 891 S.W.2d at 644; Lawson v.
B Four Corp., 888 S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1994, writ denied). 
We take all evidence favorable to the non-movant as true. Johnson, 891 S.W.2d at
644; Lawson, 888 S.W.2d at 33. As movant, the defendant is entitled to summary
judgment if the evidence disproves, as a matter of law, at least one element of each
of the plaintiff’s causes of action or, as here, conclusively establishes each element
of an affirmative defense. Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280,
282 (Tex. 1996).
          When a trial court does not state the basis for its decision in its summary
judgment order, as in this case, we must uphold the order if any of the theories
advanced in the motion is meritorious. Rogers v. Ricane Enters., Inc., 772 S.W.2d
76, 79 (Tex. 1989).Reliant’s Affirmative Defense
          In their second point of error, appellants assert that the trial court erred in
granting summary judgment because Reliant did not properly plead and prove its
affirmative defense, and in holding that Reliant was entitled as a matter of law to
enforce its Business Ethics Policy. 
          A party avoids liability for tortious interference if it has a legal justification or
excuse for its act. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689-90 (Tex. 1989). 
Legal justification or excuse for interference with another’s contractual relations is
an affirmative defense for which the defendant has the burden of proof. Id. at 690. 
Under the defense of legal justification or excuse, one is privileged to interfere with
another’s contract (1) if the interference is done in a bona fide exercise of one’s own
rights, or (2) if one has a right in the subject matter equal or superior to that of the
other party. Southwestern Bell Tel. Co. v. John Carlo Texas, Inc., 843 S.W.2d 470,
472 (Tex. 1992); Sakowitz, Inc. v. Steck, 669 S.W.2d 105, 107 (Tex. 1984); Gillum
v. Republic Health Corp., 778 S.W.2d 558, 566 (Tex. App.—Dallas 1989, no writ).
           Reliant’s instruction to Evans and Keil in April 1999 to stop working for
Equisales is the source of appellants’ tortious interference claim. Upon review and
re-issuance of several corporate policies, including its Business Ethics Policy, 
Reliant determined that appellants’ relationship with Equisales created the appearance
of a conflict of interest.
          Reliant asserts that it clearly has a right to establish rules for the conduct of its
own employees and to enforce those rules. Compliance with company policies and
procedures provides a legal justification defense to a tortious interference claim. Lee
v. Levi Strauss & Co., 897 S.W.2d 501, 505-06 (Tex. App.—El Paso 1995, no writ).
In Gillum, the court affirmed summary judgment for a hospital owner against a
doctor’s tortious interference claim, holding that the hospital’s action was privileged. 
778 S.W.2d at 566. Undisputed evidence showed the hospital’s ownership and right
to control its operations, policies, practices, and procedures. See id. The hospital’s
owner was held to have a superior financial interest in the manner in which the
hospital was ultimately operated and performed its contractual obligations with its
patients. Id. Any interference with a doctor’s contracts with third persons which may
have occurred was thus the result of the bona fide exercise of the hospital’s rights. 
Id. 
          We find that Reliant had a bona fide right to enforce its Business Ethics Policy. 
The policy was enforced against all employees; employees other than appellants were
also instructed to discontinue relationships that Reliant felt created a conflict of
interest. Because Reliant’s alleged acts of tortious interference with appellants’
contracts with Equisales were an exercise of Reliant’s own legal rights, Reliant
established its affirmative defense of legal justification as a matter of law. 
          Appellants also assert that Reliant did not properly plead and prove its
affirmative defense because (1) it argued its affirmative defense for the first time in
its motion for summary judgment and (2) it presented no evidence in support of its
affirmative defense. Appellants are correct that Reliant asserted its affirmative
defense in its summary judgment motion before amending its answer to plead the
defense. However, Rule 166a(c) provides that summary judgment shall be rendered
based on “the pleadings . . . on file at the time of the hearing.” Tex. R. Civ. P.
166a(c) (emphasis added). A party may file an amended pleading after filing its
motion or response, but before the hearing. Cluett v. Med. Protective Co., 829
S.W.2d 822, 825-26 (Tex. App.—Dallas 1992, writ denied). Seven days before the
summary judgment hearing, Reliant timely filed its first amended answer, which
pleaded the affirmative defense of legal justification. Reliant presented summary
judgment evidence in the form of deposition testimony and affidavits in support of
its affirmative defense, as well as case law establishing the rules regarding the
affirmative defense of legal justification or excuse with regard to a tortious
interference claim. 
          We find that Reliant has conclusively established its affirmative defense;
therefore, summary judgment was proper. We do not address appellants’ first issue
because the second issue is dispositive.
Conclusion
          We affirm the judgment of the trial court.

 
                                                                                                                          
                                                             Lee Duggan, Jr.
                                                             Justice
 
Panel consists of Justices Hedges, Keyes, and Duggan.



Do not publish. Tex. R. App. P. 47