

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00626-CV

Phillip **STRICKLAND**,
Appellant

v.

Gary L. **JOERIS** and Joeris General Contractors, Ltd.,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-18400
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Rebecca Simmons, Justice, dissenting without opinion
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 30, 2012

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

Phillip Strickland appeals the trial court's take-nothing summary judgment in his suit

against Gary L. Joeris and Joeris General Contractors, Ltd.  We reverse the trial court's judgment

on Strickland's tortious interference with contract claim and remand that part of the case for

further proceedings.  We affirm the trial court's judgment on the negligence claims.

**BACKGROUND**

Phillip Strickland began working as a salesman for CMC Rebar in May 2007. Strickland was recruited from a sister company by Wilbur Davis, CMC Rebar's general manager, and Brock Pittman, its sales manager, to develop sales for a new line of products. Later in 2007, Strickland and his wife bought a house from Gary Joeris, the president of the general partner of Joeris General Contractors, Ltd. Joeris General Contractors, Ltd. was an important customer of CMC Rebar, and Gary Joeris and Wilbur Davis had been friends for a long time. However, Strickland had never dealt with Joeris General Contractors while working for either CMC entity.

As the Stricklands were preparing to move into the house, they came to believe that the house had structural foundation problems that had not been properly disclosed by the seller, Joeris. Strickland called Joeris to set up a time for he and his wife to meet with Joeris about the house. A meeting was scheduled for 11:00 a.m. on Wednesday, December 19, 2007, in Joeris's office. At the meeting, Strickland told Joeris he wanted Joeris to buy the house back. According to Strickland, Joeris became indignant. According to Joeris, Strickland refused to say why he wanted Joeris to take the house back and became aggravated. Strickland determined the meeting was not progressing and decided to leave. He testified he told Joeris that they "were left with no choice but to pursue what other remedies are available to us." Joeris testified he did not remember exactly what was said, but he felt as if Strickland was threatening him and clearly gathered from the conversation that there would be a lawsuit if he did not repurchase the house.

Shortly after the Stricklands left his office, Joeris called Wilbur Davis and communicated his anger about the matter. When Strickland returned to work, he was called into a meeting with Davis and Pittman. Davis suspended Strickland and told him he would no longer work for the San Antonio office of CMC Rebar. Davis told Strickland he would be fired if he did not find a

position in an office outside San Antonio. After the meeting, Davis documented the employee action in an email to CMC's regional manager and the head of human relations in the corporate office. The email stated in full:

> This is to inform and document the suspension of Hoppy Strickland at CMC Rebar San Antonio with him having the ability to transfer to another CMC location if possible and if not then termination.
>
> Today Hoppy went to the office Joeris General Contractors and confronted Mr. Gary Joeris in regards to a problem he has involving a house Hoppy purchased from Mr. Joeris. According to a phone call from Mr. Joeris to myself there was a threat by Hoppy of legal actions if he did not buy the house back. The house in question was purchased about November 12th of this year and according to Hoppy has some defects. He has communicated this to just about everyone in our office and it had gotten to the point that his immediate supervisor (Brock Pittman, sales manager) asked him to keep his personal affairs to himself. Since said purchase Hoppy has spent numerous hours of company time dealing with this house and just as this mornings meeting did not ask for time off or approval to conduct his personal affairs on company time. Mr. Joeris also made it clear that to have an employee from one of his major suppliers threaten legal actions could possibly jeopardize all current and future work. He also made it quite clear that Hoppy was not to call on any project that Joeris was doing. I called a meeting with Hoppy and Brock around noon and explained that Hoppy had used bad judgment and had also taken advantage of CMC as a whole. The decision was made by myself to suspend Hoppy from employment at CMC Rebar San Antonio immediately and when asked by Hoppy that I would support a transfer to another location if he found one. If not then he would be terminated.
>
> If any one has any questions please feel free to contact me.

Strickland did not transfer to another location and his employment was terminated in January 2008.

Strickland filed this suit against Joeris and Joeris General Contractors., Ltd., alleging tortious interference with contract, negligent misrepresentation, and negligence. Strickland contends he was fired by CMC Rebar because Joeris threatened CMC's business if Strickland remained an employee. Strickland contends Joeris's call to Davis was based on a purely

personal matter unrelated to Strickland's job performance. After discovery, the defendants[1] moved for summary judgment. Joeris challenged various elements of each cause of action on both traditional and no-evidence summary judgment grounds. In addition, Joeris asserted it had conclusively established the affirmative defense of legal right and privilege. The trial court granted Joeris's motion on all causes of action without specifying its reasons and rendered a take-nothing judgment in Joeris's favor. Strickland appeals.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We take as true all evidence favorable to the nonmovant and we indulge all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* When the trial court does not specify the grounds on which it granted summary judgment, we will affirm the judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Id*. at 216.

In a traditional motion for summary judgment filed under Texas Rule of Civil Procedure 166a(c), the movant must establish that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Co. Hous. Fin. Corp*., 988 S.W.2d 746, 748 (Tex. 1999). The movant has the burden to conclusively negate at least one of the essential elements of the challenged cause of action or to conclusively prove all of the elements of an affirmative defense. *Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Pustejovsky v. Rapid-American Corp*., 35 S.W.3d 643, 646 (Tex. 2000). A matter is conclusively established if reasonable people could not differ

---

[1] The defendants do not distinguish between Gary Joeris and Joeris General Contractors Ltd. in their summary judgment pleadings or in their appellee's brief. Accordingly, they are hereafter referred to jointly as "Joeris".

as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005).

In a no-evidence motion for summary judgment filed under Texas Rule of Civil Procedure 166a(i), the movant challenges the evidentiary support for a specific element of a claim or defense after an adequate time for discovery. TEX. R. CIV. P. 166a(i) cmt. (1997). The burden shifts to the nonmovant to produce summary judgment evidence that raises a genuine issue of material fact on the challenged element. TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The nonmovant is not required to marshal its proof, but must point out evidence that raises a fact issue on each of the challenged elements. TEX. R. CIV. P. 166a(i) cmt. (1997); *Johnson v. Brewer & Pritchard*, P.C., 73 S.W.3d 193, 207 (Tex. 2002). Both direct and circumstantial evidence may be used to establish a material fact. *Ford Motor Co.*, 135 S.W.3d at 601. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Id.* at 600. "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Id.* at 601 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

## TORTIOUS INTERFERENCE WITH CONTRACT

The elements of tortious interference with contract are (1) the plaintiff had a valid contract, (2) the defendant committed an act of interference that was willful and intentional; (3) the interference was a proximate cause of plaintiff's damages; and (4) the plaintiff incurred actual damages. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995). It is well settled that a cause of action exists for tortious interference with an employment relationship terminable

at will. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989). Legal justification or privilege is an affirmative defense to the tort. *Sterner*, 767 S.W.2d at 690.

### *Willful and intentional interference*

Joeris challenged the element of willful and intentional interference on both traditional and no evidence grounds. Joeris contends he did not demand Strickland be fired and did not intend that result. To defeat summary judgment, Strickland was required to produce some evidence that Joeris interfered with his employment contract and that the interference was intentional. The act of interference need not be an express demand; that is, Strickland is not required to prove that Joeris demanded or directed that he be fired. The interference may be by inducement, and "[t]he inducement may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other. Thus it may be a simple request or persuasion exerting only moral pressure. Or it may be a statement unaccompanied by any specific request but having the same effect as if the request were specifically made." RESTATEMENT (SECOND) OF TORTS § 766, cmt k. (1979). Strickland was also required to produce some evidence that Joeris acted with intent to induce CMC to fire Strickland. *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). The summary judgment burden on intent is met with evidence the defendant knew of the existence of the contract and performed the acts with the desire, knowledge, or belief that interference with the contract would result from that conduct. *See id.* The burden of producing some evidence of intentional interference may be met with circumstantial evidence. *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 794 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "Circumstantial evidence may raise a fact issue if, from the evidence a reasonable person would conclude that the existence of the fact is more reasonable than its nonexistence. The circumstances need only point to ultimate facts sought to be established with

such a degree of certainty as to make the conclusion reasonably probable." *Id.* (internal citation omitted).

In support of the traditional motion for summary judgment, Joeris produced his own deposition testimony that he called Davis because he did not like being threatened with legal action and did not want Strickland on Joeris property or job sites, or dealing with any Joeris accounts. He testified he did not call Davis to get Strickland fired and it was not his intent to jeopardize Strickland's employment with CMC Rebar. Joeris also produced excerpts from Davis's deposition, in which Davis testified that he was not quoting Joeris in his email and that Joeris did not threaten to stop doing business with CMC Rebar.

In response, Strickland submitted evidence that Joeris is an important customer of CMC Rebar and that Joeris was aware at the time of the telephone call that CMC Rebar had major accounts with Joeris. Strickland submitted Davis's employee action email, which Davis prepared within hours of the telephone call from Joeris. In the email, Davis stated that Joeris "made it clear that to have an employee from one of his major suppliers threaten legal actions could possibly jeopardize all current and future work." Although Davis testified he was not quoting Joeris and that Joeris had not directly threatened CMC's business, Davis testified several times in his deposition that what he wrote in the email was his interpretation of the conversation with Joeris.

Taking as true all evidence favorable to Strickland, the nonmovant, and indulging all reasonable inferences and resolving all doubts in his favor, the summary judgment evidence creates a fact issue on whether Joeris intentionally interfered with Strickland's employment contract. The evidence is undisputed that Joeris demanded Strickland not call on any of its accounts. The evidence at least raises a fact question about whether Joeris made statements to

Davis that threatened CMC Rebar's business. The evidence is undisputed that Davis interpreted the conversation that way, and his contemporaneous email affirmatively states Joeris made the threat to CMC's business "clear." A rational jury could reasonably conclude that Joeris knew his demand that Strickland not call on his accounts and his threat to withhold business from a major supplier would have the likely result of injuring Strickland's employment. Accordingly, the summary judgment cannot stand on this ground. *See Lee v . Levi Strauss & Co.*, 897 S.W.2d 501, 504-05 (Tex. App.—El Paso 1995, no writ) (holding fact issue existed as to whether Levi Strauss intentionally interfered with sales representatives' employment contract where circumstances and language in letter from Levi Strauss to employer led employer to believe he had to fire sales representative in order to obtain new business from Levi Strauss, although letter did not expressly demand they be fired or expressly threaten future business); *see also Albertson's, Inc. v. Hufnagle*, No. 05-01-00573-CV, 2002 WL 1964236, at *5 (Tex. App.— Dallas Aug. 26, 2002, no pet) (holding jury could rationally conclude Albertson's knew and understood risk to plaintiff's job when it accused her of theft and asked that she no longer work as the sales representative for the store).

### Causation

Joeris's motion also challenged the element of causation on both traditional and no evidence grounds. Joeris relies on Davis's deposition testimony that he suspended and then fired Strickland because he disregarded a direct order from Davis not to deal with personal affairs during company time. Strickland relies on the evidence that Joeris was an important customer with major CMC accounts and Davis's email, which Davis testified was prepared in accordance with company procedure to document the reasons for firing or suspending an employee.[2]

---

[2] Davis also relies on the Texas Work Force Commission's finding, following an investigation of Strickland's claim for unemployment compensation, that CMC discharged him "for a reason that is not misconduct connected with the

A defendant's interfering conduct need only be a proximate cause of the harm to plaintiff for there to be liability. *Albertson's*, 2002 WL 1964236, at *4 (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). The evidence of the economic relationship between the companies and the fact that Davis included Joeris's threat to that relationship in his recitation of the reasons for the employee action against Strickland is some evidence of proximate cause. A rational jury could reasonably infer from this evidence that Joeris's threat to "jeopardize all current and future work" was a proximate cause of Davis's decision to suspend and then fire Strickland. *See Albertson's*, 2002 WL 1964236, at *4 (affirming verdict for plaintiff in tortious interference with contract claim and holding evidence legally and factually sufficient to support finding of proximate cause where plaintiff was fired after customer/defendant called employer, reported alleged wrongdoing by plaintiff, and requested she be replaced by a new sales representative, even though employer stated reason for termination was violation of a company policy). Because the evidence is sufficient to create a fact question for a jury on proximate cause, summary judgment on this ground was in error.

### Damages

Joeris's motion for summary judgment included a contention that there is no evidence Strickland incurred actual damage or loss as a result of the alleged interference. In response, Strickland filed the reports of both his and Joeris's economic experts. Both experts stated their conclusions about the economic losses Strickland suffered as a result of being fired. Although they do not agree on the ultimate figure, both conclude Strickland suffered actual economic

---

work." The trial court overruled Joeris's objections to the Commission records, and Joeris argues on appeal that the trial court's ruling was an abuse of discretion. Because we hold Strickland presented sufficient summary judgment evidence to create a fact question regarding causation without considering the Commission document, we do not decide the evidentiary question.

harm. Accordingly, Joeris was not entitled to summary judgment on the ground there is no evidence of damage.

### *Legal justification and privilege*

Joeris's motion for summary judgment included an assertion that:

After being threatened by Strickland, Joeris exercised his legal right to ask that CMC Rebar not use Strickland as a salesman on Joeris Construction projects. A company has a legal right to say that it does not want employees from an unrelated company working on its jobs. That is what Joeris did. His call was privileged and justified.

Legal justification or privilege is an affirmative defense to tortious interference with contract. *Sterner*, 767 S.W.2d at 689-90. "The party asserting this privilege does not deny the interference but rather seeks to avoid liability based upon a claimed interest that is being impaired or destroyed by the plaintiff's contract." *Id.* Under this defense, "one is privileged to interfere with another's contract (1) if it is done in a bona fide exercise of his own rights, or (2) if he has an equal or superior right in the subject matter to that of the other party." *Id.*, at 691. Joeris does not contend he had an equal or superior interest to Strickland's in the employment contract between Strickland and CMC. Rather, Joeris contends he conclusively established that the telephone call to Davis was done in a bona fide exercise of Joeris's own rights.

As a general rule, a business has a right to insist on a certain level of performance from its suppliers and those who service its accounts and the right to control its premises. *See e.g., Lee*, 897 S.W.2d at 505. However, Joeris does not contend it had a legal right to demand, either expressly or impliedly, that a supplier's employee, with whom Joeris had never had business dealings, be suspended or fired. *See Sterner*, 767 S.W.2d at 688, 691 (evidence that contractor's employee was fired "per Marathon's directive" because employee had successfully sued Marathon five years earlier and was placed on list of people not allowed on Marathon property,

held to be some evidence that Marathon's interference with Sterner's employment was not done in the bona fide exercise of its own rights). As discussed above, the evidence is sufficient to create a fact issue as to whether Joeris threatened CMC's current and future business in order to induce Davis to fire Strickland. Because Joeris does not contend or argue this conduct was justified or legally privileged, the defendants did not conclusively establish the affirmative defense. Moreover, the summary judgment evidence establishes that Strickland had never dealt with any Joeris Construction accounts and Joeris had no knowledge of Strickland's work performance. Joeris's call to Davis was based solely on his personal dispute with Strickland about the house and was unrelated to either Strickland's employment with CMC or Joeris's business with CMC. This is evidence that Joeris's interference with Strickland's employment was not done in the bona fide exercise of its own rights. *See Armijo v. Mazda Int'l*, No. 14-03-00365-CV, 2004 WL 1175335, at \*4 (Tex. App.—Houston [14th Dist.] May 27, 2004, pet. denied).

Joeris failed to conclusively establish its affirmative defense and was not entitled to summary judgment on this ground.

### NEGLIGENT MISREPRESENTATION

Strickland's petition asserts that Joeris committed negligent misrepresentation by providing CMC false information regarding Joeris's meeting with the Stricklands and the nature of the dispute about the house. The elements of a negligent misrepresentation claim are: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by

justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Joeris challenged each element of the cause of action on both traditional and no-evidence grounds. Strickland did not respond to the motion with any evidence that he relied on any representation made by Joeris to CMC. We therefore affirm the summary judgment on Strickland's negligent misrepresentation claim.

## NEGLIGENCE

In his negligence claim, Strickland asserted that Joeris breached a duty of ordinary care by telling Strickland's employer that Strickland could "jeopardize all current and future work." Joeris's motion for summary judgment asserts that Texas law does not recognize a cause of action for negligent interference with contract and sought both a traditional and no evidence summary judgment on each element of the negligence claim. Strickland argues that he has not alleged a cause of action for negligent interference with his employment contract, but rather is asserting a negligence claim based on Joeris's breach of "a duty of ordinary care to not get him fired." We agree with the trial court that Joeris is entitled to summary judgment on the negligence cause of action.

Strickland contends Joeris owed him a duty "to not get him fired," and pleads that Joeris's statements in his telephone call to Davis constituted a breach of that duty and resulted in the termination of Strickland's employment. Thus the negligence claim is based on the same facts as the interference with contract claim, except for the conduct is alleged to have been committed negligently rather than intentionally. "Interference with contract is tortious only if it is intentional." *Sw. Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992); *Coast Energy Mgmt., Inc. v. Segal*, No. 04-02-00550-CV, 2003 WL 1964386, at *3 (Tex. App.— San Antonio April 30, 2003, no pet.)(mem. op.)(same). This is consistent with the Restatement

(Second) of Torts, which provides that "[o]ne is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently (a) causing a third person not to perform a contract with the other, or (b) interfering with the other's performance of his contract . . .." RESTATEMENT (SECOND) OF TORTS § 766C (1979). In the absence of a special relationship or where such duty is implicitly undertaken, there is ordinarily no duty of reasonable care owed to protect against purely economic loss, and thus liability is generally not imposed for negligent interference with contract. D. DOBBS, THE LAW OF TORTS § 452, at 1282-83 (2001). No Texas court has recognized such a duty and we decline to do so here. The trial court therefore did not err in granting summary judgment on Strickland's negligence claim.

## CONCLUSION

We affirm the trial court's take-nothing summary judgment on Strickland's negligence and negligent misrepresentation claims against Joeris and Joeris General Contractors, Ltd. We reverse the summary judgment on Strickland's tortious interference with contract claim and remand the cause to the trial court for further proceedings.

Steven C. Hilbig, Justice